No. 80-207

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

HUGH A. SPRAGGINS,

Plaintiff and Respondent,

-vs-

GARY L. ELVIDGE,

Defendant and Appellant.

---

Appeal from: District Court of the Sixth Judicial District,
In and for the County of Park, The Honorable
Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair, Murphy, Nelson,
Edwards, McGimpsey an Molloy, Billings, Montana

For Respondent:

Yardley and Yardley, Livingston, Montana

---

Submitted on Briefs: October 23, 1980

Decided: APR 1 1981

Filed: APR 1 1981

*Thomas J. Kearney*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant-defendant, Gary Elvidge, and respondent-plaintiff, Hugh Spraggins, were engaged in a business called Diablo Mobile Repair in California. As partners, they sold and transferred the business to a third party in 1978.

In September 1977 appellant and respondent contracted to purchase equally stock shares of the Mint Bar of Livingston, Inc., from George A. and Donna F. Moore. Each partner was to participate and share in the new business.

The California business was sold. From the total purchase price, $12,500 was invested in the Mint Bar.

Later, appellant agreed to buy, and respondent agreed to sell, respondent's interest in the 1501 shares of stock of the Mint Bar. The parties entered into a contract (assignment of agreement and a release) on August 31, 1978. Prior to this time appellant and respondent discussed the sale and purchase of the stock of the Mint Bar. These discussions covered all business interests of the partners including the California business.

Respondent and his wife testified that appellant was entitled to one half of the proceeds from the sale of Diablo Mobile Repair and one half of the cash on hand. Respondent claims, and the District Court found, that appellant and respondent mutually agreed, prior to the signing and execution of the assignment of agreement, that the sum of $25,000 would be paid by appellant to respondent. Respondent contends the amount was in full settlement of all transactions between respondent and appellant. Any interest appellant had in the Diablo Mobile Repair was completely

-2-

settled and resolved and any interest respondent had in the shares of stock of the Mint Bar was completely settled.

Appellant paid respondent $15,000 on September 5, 1978, and executed a promissory note for $10,000 payable to respondent for the remaining amount.

Appellant failed to pay the $10,000 promissory note when due, and respondent commenced this action. Appellant counterclaimed for monies due and owing him from the sale of the California business as a setoff for the amount due to respondent on the promissory note.

The District Court found in favor of respondent's claim for collection of the promissory note and against appellant on his claim of setoff as a result of the sale of the California business.

Appellant contends that the only written agreement between the parties pertains to the termination of respondent's interest in the Mint Bar. The assignment of agreement and the release executed by the parties both provide that the consideration to be given by appellant to respondent is $25,000. Nowhere in either of these documents is there any mention of the Diablo Mobile Repair or the sums due and owing from respondent to appellant as a consequence of the sale thereof. Appellant argues the District Court allowed respondent to alter the terms of the written contract by adding approximately $15,000 as the total consideration paid (appellant's alleged one half of the proceeds from the sale of Diablo Mobile Repair).

The District Court made the following finding:

"That Rule 106 of the Montana Rules of Evidence applies as to the admission of evidence by Plaintiff to Defendant's counterclaim and affirmative defense and that

-3-

the Montana completeness doctrine rule allows evidence by Plaintiff that all business transactions were resolved between Plaintiff and Defendant, specifically including Diablo Mobile Repair."

This finding permitted the District Court to modify the written agreement.

The sole issue in this appeal is whether Rule 106, Mont.R.Evid., allows parol evidence under the facts of this case.

We find the District Court erred in allowing parol evidence to alter and vary the terms of this written agreement under the theory of the completeness doctrine.

Respondent does not argue that this case represents one where testimony was offered and properly admitted as part of one of the exceptions of the parol evidence rule. Instead, Rule 106, Mont.R.Evid., was used to modify the written contract.

The relevant statutes which address parol evidence are set forth below.

Section 28-2-904, MCA:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

Section 72-11-304, MCA:

"(1) When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"(a) where a mistake or imperfection of the writing is put in issue by the pleadings;

-4-

"(b) where the validity of the agreement is the fact in dispute.

"(2) But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in 1-4-102, or to explain an extrinsic ambiguity or to establish illegality or fraud.

"(3) The term agreement includes deeds and wills, as well as contracts between parties."

Section 1-4-102, MCA:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret."

None of the parol evidence exceptions contained in section 72-11-304, MCA, apply here. Respondent never claimed in his pleadings that the writings were imperfect. No one assailed the validity of the contract. Section 28-2-904, MCA, is controlling. When the contract is clear and unequivocal on its face, section 1-4-102, MCA, does not apply. Ryan v. Ald, Inc. (1965), 146 Mont. 299, 406 P.2d 373. We have here a written contract. The contract is signed by appellant and respondent. The written contract is clear on its face. It speaks directly and exclusively of the Mint Bar. The "oral" agreement which preceded the written agreement does not control, nor can it be allowed to alter the terms of the written contract.

"The principle is well-established and of general application, subject to certain exceptions, that when a contract has been reduced to writing the contents of such writing cannot be added to, contradicted, altered, or varied by parol or extrinsic evidence, and that such writing supersedes all oral negotiations concerning its matter which preceded, accompanied, or led up to its execution. This was the rule at common law,

and has been embodied in the statute law of this state." Leigland v. McGaffick (1959), 135 Mont. 188, 338 P.2d 1037.

Rule 106, Mont.R.Evid., provides in pertinent part:

"(a) When part of an act, declaration, conversation, writing or recorded statement or series thereof is introduced by a party: (1) an adverse party may require him at that time to introduce any other part of such item or series thereof which ought in fairness to be considered at that time; . . ." (Emphasis supplied.)

Without even discussing the parol evidence rule the District Court relied on Rule 106 in modifying and varying the terms of a written agreement. Such was never the intent of Rule 106. Rule 106 of the Federal Rules of Procedure is the counterpart to Montana's Rule 106, and, according to the advisory committee's note, the federal rule is based on two considerations: (1) the danger of taking matters out of context, and (2) the inadequacy of delayed completeness as a remedy. See 21 Wright and Graham, Federal Practice and Procedure: Evidence, § 5007 at 367.

No one introduced part of an act or writing in this case. Respondent introduced all of the writings governing the buy out of the Mint Bar operation. All of the terms surrounding the consideration to be paid to respondent for the surrendering of his interest in the Mint Bar were offered and received in evidence.

We addressed a similar issue in State Highway Commission v. Churchwell (1965), 146 Mont. 52, 403 P.2d 751, where the parties were contesting a jury award of the taking of land by condemnation. The parties were arguing about the fair market value of the land that was taken. At the trial, to establish the value of the property, the landowners offered final agreements of sale for land in the

-6-

vicinity of the land in question to demonstrate the value of their land. The State then, over objection, was allowed to introduce all documents regarding the negotiations that led to each of the various sales. The State argued that the entire files were admissible under section 93-401-11, R.C.M. 1947. That section was the predecessor and forerunner to Rule 106, Mont.R.Evid., and read:

> "When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation or writing, which is necessary to make it understood, may also be given in evidence."

We rejected the State's argument in <u>Churchwell</u>, stating:

> "'When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter.' (Section 13-705.)
>
> "'When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:
>
> "'1. Where a mistake or imperfection of the writing is put in issue by the pleadings.
>
> "'2. Where the validity of the agreement is the fact in dispute.
>
> "'But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 93-401-17, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties.' (Section

-7-

93-401-13).

> "A careful study of the negotiation agreements in the Negotiation File shows that the agreement speaks for itself and that section 93-401-11, R.C.M. 1947, has no application." 403 P.2d at 754-55.

In the instant case respondent offered the parol testimony to vary and alter the terms of a written instrument. This cannot be done. For this Court to hold otherwise would, in effect, rob the parol evidence rule and the corresponding Montana statutes of any vitality at all. Rule 106 is a procedural rule and does not affect the substance of the existing law of parol evidence.

We affirm in part the District Court's finding that appellant is liable for the $10,000 promissory note. We reverse the finding that all business transactions, including the Diablo Mobile Repair business, were settled by the agreement. We remand to the District Court to conduct further proceedings to determine the validity of appellant's counterclaim.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices