No. 84-164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN THE MATTER OF THE ESTATE OF
IRENE M. WHITE, Deceased.

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Glacier,
               The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Frisbee, Moore, & Stufft; David F. Stufft,
          Cut Bank, Montana

     For Respondent:

          Werner, Nelson & Epstein; Larry D. Epstein,
          Cut Bank, Montana

                        Submitted on Briefs:   July 19, 1984

                                    Decided: August 30, 1984

Filed: AUG 30 1984

*Ethel M. Harrison*

_____
              Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Irene White died intestate October 7, 1981. Virgil White was appointed personal representative of her estate. Joseph Rattler, Sr., brother of Irene White, sought removal of Virgil White as personal representative and his own appointment in the Ninth Judicial District Court for Glacier County. The District Court found that no common law marriage existed between Virgil White and the decedent and appointed Rattler as personal representative. Virgil White appeals. We affirm.

The issue is: Was there a common law marriage between Virgil White and Irene White at the time of her death?

Irene White died a resident of Glacier County, Montana, with an estate consisting of trust property located on the Blackfeet Indian Reservation, which is not the subject of this probate, a mobile home located in Cut Bank and a savings account at the First National Bank of Cut Bank.

In 1952 the decedent married Harry White, father of Virgil White. Harry White and decedent remained husband and wife until Harry White's death in 1967. Virgil White moved in with Harry White and Irene White around 1966 and the three of them lived together for approximately two years. It is undisputed that after Harry White's death, Virgil White continued to live with decedent until her death in 1981.

The evidence regarding the alleged common law marriage of Virgil White and decedent is conflicting. A number of witnesses testified in behalf of Virgil White to the effect that Virgil White and Irene White had a reputation in the community of being husband and wife and on occasion represented themselves as husband and wife. These witnesses included the long-time sheriff of Glacier County who

2

testified to their reputation as husband and wife in the community.

On the other hand, the evidence submitted by Rattler, decedent's brother, indicated that the decedent conducted her banking transactions and maintained bank accounts exclusively in her own name. Virgil White maintained bank accounts exclusively in his own name. With one exception on various applications for welfare assistance, Virgil White was listed as a "stepson" or as a "boarder." The decedent received Social Security benefits as an unmarried widow during the period in question. On her frequent visits to the hospital, the decedent listed herself as unmarried and referred to Virgil White as a "stepson." Admission forms at the hospital showing such a designation were signed by Virgil White.

The District Court in its findings of fact stated that the decedent solely owned the mobile home she and Virgil lived in; that decedent held a savings account in her own name and conducted all banking transactions as an unmarried woman in her own name; that Virgil White had a bank account in his own name; that the decedent in her frequent visits to Glacier County Memorial Hospital referred to Virgil White as "stepson"; and that on all applications for welfare and assistance, with one exception, decedent listed Virgil White as "stepson" and as "boarder." The District Court also found that on applications for insurance, Social Security and other public assistance benefits, Virgil White listed himself as unmarried or single. The District Court found that Virgil White had assisted the decedent for many years around the house and that Virgil and the decedent had engaged in sexual intercourse. We note that the facts of this case are quite comparable to a case recently decided by this Court, Estate of Sartain (Mont. August 30, 1984), No. 84-15, ____ P.2d

3

_____, _____ St.Rep. _____, where we affirmed the District Court's finding that there was no common law marriage.

Ultimately the District Court concluded that at the time of her death the decedent was an unmarried woman residing with her stepson and that her lawful heirs were her three brothers. The District Court concluded that Virgil White had failed to meet his burden in asserting a common law marriage. In making that determination, the District Court emphasized that to establish a common law marriage, Virgil White was required to prove that the marriage took place immediately. A common law marriage cannot be created piecemeal, but rather comes instantly into being or does not come at all.

In our review of the District Court's findings of fact, we apply the test set forth in Rule 52(a), M.R.Civ.P., which provides that findings of fact shall not be set aside unless clearly erroneous and requires that we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Sartain, supra. Having reviewed the record, we find that there is substantial evidence to support the District Court's findings of fact and that the findings of fact are not clearly erroneous. As in Sartain, we emphasize that it is essential that we give due regard to the opportunity of the District Court to judge the relative credibility of the witnesses. We apply the standard of review set forth in Cameron v. Cameron (1978), 179 Mont. 219, 587 P.2d 939 and affirmed in Spraggins v. Elvidge (Mont. 1982), 647 P.2d 859, 39 St.Rep. 1229.

There is no significant dispute between the parties as to the rule of law which applies in Montana to common law marriage relationships. The issue before us is whether the trial court's finding that there was no common law marriage should be set aside as clearly erroneous. Virgil White has

4

failed to show that the findings and conclusions of the court were erroneous.  We affirm the District Court.

_____
Justice

We concur:

_____

_____

_____

_____
Justices